UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LISA M. HAYENGA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:23 CV 944 RWS |
| | ) |
| MARTIN O'MALLEY[1], | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

Lisa M. Hayenga brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Commissioner's decision denying her application for disability benefits under the Social Security Disability Insurance Program (SSDI), Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  For the reasons set forth below, I will affirm the decision of the Commissioner.

### **Procedural History**

Plaintiff Lisa Hayenga was born on April 8, 1990.  She is currently 34 years old.  Hayenga has at least a high school education.  (Tr. 25)  In the past several years before she applied for disability benefits Hayenga worked as an office clerk /

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

administrative assistant, a kennel caretaker, a veterinary technician, and a receptionist.  (Id.)  Hayenga had employment earnings of $13,704.19 in 2019 and $2,283.26 in 2020.  (Tr. 4140  The last job Hayenga held was as a receptionist.  (Tr. 468-469.)  The last time she had gainful employment was in March 2020.  (Tr. 468.)

Hayenga protectively filed a Title II application for a period of disability and disability insurance benefits on June 29, 2020.  (Tr. 10)  Her alleged disability began on that date.  Hayenga's application was initially denied on August 26, 2020.  (Tr. 226-230)  On March 30, 2021, Hayenga filed a request for a hearing before an Administrative Law Judge (ALJ).  (Tr. 243-244)   The ALJ held three hearings on August 26, 2021, May 9, 2022, and May 23, 2022.  (Tr. 75, 41, and 116)  At these hearings Hayenga testified that she believes she is disabled based on her anxiety, post-traumatic stress disorder, fibromyalgia, nerve issues, panic attacks, ulcerative colitis, and stomach issues.  (Tr. 84, 88)  She testified that due to her symptoms, she doesn't leave her house unless she "absolutely has to for doctors' appointments and stuff."  (Tr. 88)  On August 16, 2022, the ALJ issued a decision finding that Hayenga was not disabled.  (Tr. 27)  On May 23, 2023, the Appeals Council denied plaintiff's request for review.  (Tr. 1)  The ALJ's decision is now the final decision of the Commissioner.  42 U.S.C. §§ 405(g).

In this action for judicial review, Hayenga contends that the ALJ's residual

functional capacity (RFC) determination was unsupported because the ALJ "disregarded or improperly discredited all psychiatric medical opinions while selectively citing medical evidence in order to reach her decision." (ECF # 18 at 5) Hayenga requests that I reverse the Commissioner's final decision and remand for an award and calculation of benefits or remand this matter for further evaluation. For the reasons that follow, I will deny Hayenga's request to remand this matter for an award of benefits or for further proceedings.

### Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Hayenga's statement of material facts (ECF # 18). Additional facts will be discussed as needed to address the parties' arguments.

### Discussion

A.  <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, a plaintiff must prove that she is disabled. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001); <u>Baker v. Secretary of Health & Human Servs.</u>, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

3

months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity (SGA).[2] If not, the disability analysis proceeds to the second step. In this step the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled and the analysis ends. If the claimant has a severe impairment the Commissioner then proceeds to the third step and determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If

---

[2] "Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. 'Substantial work activity' is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). 'Gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience." (Tr. 12.)

claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  If the impairment is not equivalent to a listed impairment, then the Commissioner proceeds to the fourth step to determine whether the claimant can perform her past relevant work.³  If so, the claimant is not disabled. If not, at the last step the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  "[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (cleaned up). Determining whether there is substantial evidence requires scrutinizing analysis. Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well

---

³ "The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965)." (Tr. 13.)

as any evidence that fairly detracts from the decision. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara, 590 F.3d at 610.

When evaluating medical opinions and prior administrative medical findings, the ALJ will consider various factors, the "most important factors" being supportability and consistency. 20 CFR § 404.1520c(a). The ALJ must "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in your case record." Id. at § 404.1520c(b).

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski

v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

Id. at 1322.[4] When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

B.   ALJ's Decision

In her written decision, the ALJ found that Hayenga had not engaged in substantial gainful activity since June 29, 2020, the alleged onset of her disability. (Tr. 12) The ALJ found that Hayenga had the following severe impairments: anxiety, major depressive disorder in partial remission, post-traumatic stress disorder, ulcerative colitis, mild intermittent asthma, polycystic ovary syndrome,

---

[4] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." See SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

7

morbid obesity, fibromyalgia, lupus anticoagulant disorder, and migraine headaches.  (Id.)  The ALJ determined that Hayenga's impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13.)  The ALJ found Hayenga to have the residual functional capacity (RFC) to perform sedentary work with the following limitations:

> [Hayenga] should never climb ropes, ladders, or scaffolds. She is able to occasionally stoop but should never balance (as defined in the DOT/SCO), kneel, crouch or crawl.  [She] should avoid concentrated exposure to pulmonary irritants.  She is able to have occasional exposure to vibrations but should avoid all exposure to temperature extremes (hot and cold) and hazards (such as unprotected heights and moving mechanical parts).  [She] is limited to detailed tasks with occasional changes in work setting and job duties.  She should have no fast-paced production requirements, and perform no tandem tasks and no adversarial-type activities (such as addressing customer complaints).

(Tr. 15-16)  The ALJ determined that Hayenga is unable perform any past relevant work.  (Tr. 25)  The ALJ consulted a vocational expert (VE) to assess whether jobs within Hayenga's RFC existed in significant numbers in the national economy.  (Tr. 26)  The VE identified the jobs of a document preparer (15,600 positions); escort vehicle driver (29,556 positions); tube operator (1,300 positions); addresser (1,900 positions); and a table worker (1,005 positions).  (Tr. 128)  The ALJ therefore determined that plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 27)

C.      <u>Kayenga's Objections to the ALJ's Decision</u>

Kayenga's appeal is based on her assertion that the "ALJ disregarded or improperly discredited all psychiatric medical opinions while selectively citing medical evidence in order to reach her decision." [ECF 18 at 5] Kayenga challenges the ALJ's RFC determination. She asserts that the ALJ discounted the opinion of two state agency psychological consultants who reviewed Kayenga's claim on behalf of the Administration and opined that Kayenga's mental functioning limited her residual capacity to following simple, 1-2 step tasks. If that limitation was included in the RFC, the VE opinioned that one job would be available: table worker with 1,005 jobs nationally. (Tr. 130)

Specifically, Dr. Steven Akeson, Psy.D. performed the initial review for Kayenga's claim through the state agency Disability Determination Services (DDS). He found that Kayenga's depressive symptoms caused moderate limitations in the areas of understanding and memory, sustained concentration and persistence, and adaption, with no limitations in her ability to interact with others. (Tr. 161-162) Dr. Akeson noted that Hayenga had the residual capacity to follow simple 1-2 step instructions. (Tr. 162-163) On August 26, 2020, Hayenga's claim for benefits was denied at the initial claim level.

On September 25, 2020, Hayenga filed a request for reconsideration. Her claim was reviewed a second time by DDS Dr. Keith Allen, Ph.D. Dr. Allen noted

9

a moderate limitation in Kayenga's ability to carry out detailed instructions and concluded that she had the residual capacity to follow 1-2 step instructions. (Tr. 188-190) On March 8,2021, Kayenga's claim was denied a second time.

    The ALJ reviewed these administrative records and found that the records supported moderate limitations in Kayenga's ability to concentrate, persist, or maintain pace, and adapt or manage oneself. (Tr. 15, 22) The ALJ declined to adopt the state agency consultant's residual capacity limitation limiting Kayenga's work to 1-2 step tasks. The ALJ supported this conclusion with multiple citations to the record in which Kayenga's providers noted intact memory which, in turn, supports a mild (not moderate) limitation in Kayenga's ability to understand, remember, and apply information. (Tr. 22) The ALJ also found the limitation of 1-2 step tasks to be inconsistent with Kayenga's activities. In support of this conclusion, the ALJ cited to Kayenga's statements that "she did not need reminders to take her medications, take care of her personal needs, or go places." (Tr. 14) The ALJ also noted that Kayenga was "able to understand, remember information, and appropriately answer questions at the [administrative] hearing. (Id.) In addition, the ALJ supported her finding of only a mild limitation in the ability to understand, remember, and apply information, with the extent of Kayenga's daily activities including: frequently traveling out of state to help care for her aging parents; she could "drive and shop by computer with no problems

handling her finances;" and she could prepare simple meals, do laundry, and perform household chores. (Tr. 16, 19-20) I have reviewed the citations to the record that the ALJ relied upon in her decision as well as Hayenga's medical records and hearing testimony. Based on this record, I find that the ALJ's discounting Dr. Akeson's and Dr. Allen's residual capacity limitation of 1-2 step tasks is supported by substantial evidence.

    Hayenga also disputes the ALJ's rejection of some of psychologist Dr. Kalu Onuma, M.D.'s limitation findings. On July 26, 2020, Dr. Onuma competed a reasonable accommodations request in which he indicated that Kayenga had issues with caring for herself, concentrating, eating, sleeping, thinking, and working. Dr. Onuma noted, "During flare-ups patient is unable to function but can function fairly well in remission." (Tr. 780) He recommended "time off to see a provider during flare-ups" as an accommodation. He stated that "psychotherapy and / or medication change at the time of flare up will help to stabilize patient and return her to a baseline functioning." (Tr. 781) The ALJ found this analysis to be unpersuasive because it is inconsistent with Hayenga's ability to travel, provide assistance to her parents, attend concerts, and consistently attend appointments with multiple providers. She also noted that the record does not document numerous flare-ups which would cause the need for Dr. Onuma's recommended accommodations. The ALJ acknowledged that Hayenga required medication and

11

therapy for her anxiety, depression, and PTSD but, citing to the medical records, concluded that Hayenga's symptoms were relatively well-controlled with treatment, and mental status examinations were generally normal even when she reported increased symptoms of anxiety or depression. (Tr. 20-22) The medical records provide substantial evidence that supports the ALJ's position.

On August 9, 2021, Dr. Onuma completed a medical source statement stating that Hayenga was "unable to sustain the required concentration/focus to execute assigned job tasks." (Tr. 1135) He also opined that she would be off-task twenty percent of the day and would require redirection in her tasks one to two times per hour. He noted that she had moderate limitations in understanding and memory and had an extreme limitation to complete a normal workday without interruption from psychologically based symptoms. (Tr. 1135-1138) Dr. Onuma's records consistently document Hayenga's attention and concentration to be "fair." (Tr. 763, 883, 1043, 1323, and 1406)

The ALJ found any limitations that were more than moderate, and Dr. Onuma's extreme limitation about the ability to complete a normal workday, to be unpersuasive. (Tr. 24) Dr. Onuma's medical source statement represented that Hayenga did not have any restrictions in her activities of daily living. (Tr. 1136) The ALJ found that any marked or extreme limitations found by Dr. Onuma were inconsistent with his position that Hayenga's condition had no impact on her

activities of daily living.  <u>Abraham v. Kijakazi</u>, No. 1:22-CV-152-SNLJ, 2023 WL 3948816, at *5 (E.D. Mo. June 12, 2023) ("[A]n ALJ may discount a physician's opinion when it is internally inconsistent.").  In addition, the ALJ found that this opinion was not consistent with the medical records showing Hayenga's mental status improved and more recent records that show her memory was intact and showed good concentration.  (Tr. 24)  The records the ALJ refers to are the treatment records from Esse Health and Synergy Counseling Services dated from July 27, 2021 to February 10, 2022. (Tr. 1351, 1357, 1361, 1376, 1378, 1380, 1382, 1387, and 1394)  Those records provide substantial evidence to support the ALJ's analysis.

Hayenga also contests the ALJ's finding as unpersuasive a medical source statement completed by Marvin Miller, M.A., L.P.C., on May 6, 2022.  Miller stated that due to stress from her physical condition, Plaintiff may never be able to work a full-time job.  She would be off-task more than 10%, but less than 20% of the workday, and would require redirection one or two times per day.  He further stated that she would be absent from work more than three times a month and had marked restrictions in her activities of daily living.  (Tr. 1413-1417)

As with her analysis of Dr. Onuma's opinions, the ALJ found any limitation diagnosed by Miller that was more than moderate to be unpersuasive.  The ALJ stated that any marked or extreme limitations noted by Miller "are not consistent

13

with the claimant's activities during the relevant period including traveling out of state for care, traveling and then helping with the care of her ailing father, and attending numerous appointments with numerous doctors." (Tr. 24)  The ALJ also noted that Hayenga never sought emergent care nor has she been hospitalized for her mental health issues during the relevant period.  The ALJ cited again the medical records that showed Hayenga's memory was intact and that she had good concentration.  The ALJ also noted that Miller's suggestion that Hayenga has a marked limitation in her activities of daily living is contradicted by Dr. Onuma's opinion that Hayenga had no restrictions in activities of daily living.  (Tr. 25)

## Conclusion

Based on the record as a whole in this case, I find that the ALJ's conclusion regarding Hayenga's RFC is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED that** the final decision of the Commissioner of Social Security is affirmed.

**IT IS FURTHER ORDERED that** The Clerk of Court shall substitute Martin O'Malley, Commissioner of Social Security, as the defendant in this matter.

A separate Judgment is entered herewith.

```
                              _____
                              RODNEY W. SIPPEL
                              UNITED STATES DISTRICT JUDGE
```

Dated this 13th day of September, 2024.